IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. 16-522 |
| EDDIE BAEZ, | |
| *Defendant.* | |

PAPPERT, J.                                                                                              February 9, 2017

## MEMORANDUM

On October 26, 2016 Eddie Baez was charged with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. The following day, the United States Pretrial Services office submitted its report to the magistrate judge in advance of Baez's detention hearing. The report recommended that Baez be released on bail with several conditions, including that he live with his parents in their home in Philadelphia. On November 15, 2016, after hearing argument, the magistrate judge granted the Government's Motion for Pretrial Detention. On November 22, 2016 Baez filed an appeal from the magistrate judge's detention order and a motion to set bail. On January 20, 2017 Pretrial Services updated its original report, reaffirming its recommendation that Baez be eligible for bail. The Court held a hearing on January 31, 2017[1] and for the reasons that follow grants the motion for bail.

**I.**

On October 24, 2016 U.S. Postal Inspector Paul Zavorski intercepted a USPS Priority Mail package addressed to "Fam. Diaz, 3646 Frankford Ave., Phila., PA 19134" with a return address of "Calmen Diaz, Virginia Valley x2 Calle, San Anton, 00777." The package was

---

[1]   The hearing, originally scheduled for January 5, 2017, was continued twice at defense counsel's request.

mailed from Juncos, Puerto Rico, which postal inspectors know to be a common narcotics trafficking area. The package's return address did not exist in any law enforcement database, a common trait of packages containing controlled substances. Pursuant to a search warrant, postal inspectors opened the package and found a wooden box wrapped in yellow gift wrap. The box, formed from five glued wooden panels topped with a nailed-in wooden panel, was filled with carbon paper and spray foam. Embedded in the spray foam were two heavily wrapped brick-shaped objects containing approximately two kilograms of a white powdery substance which field tested positive for cocaine. The inspectors repackaged the wooden box with sham white powder ("sham parcel") in preparation for a controlled delivery.

On October 25, 2016 the controlled delivery was conducted and an individual (whose identity is known to law enforcement) received the package at 11:35 a.m. at 3646 Frankford Avenue, Philadelphia. Postal records show that in the six months prior to this delivery, four other Priority Mail packages were delivered to this address, all with similar characteristics to the intercepted package (weighing approximately eight pounds and containing handwritten address labels listing the recipient as "Fam Diaz" and using a fictitious return address). Ten minutes later, the individual took the package to a residence at 3631 Frankford Avenue. Postal records show that in August, two other similar Priority Mail packages from Caguas, Puerto Rico were delivered to this address. Around 1:30 p.m. law enforcement observed as Baez drove to this address, picked up the package and returned with it to his home at 639 Garland Street. Postal records show that in August and September, four other Priority Mail packages originating from Caguas or Juncos were delivered to Baez's address, all with the aforementioned characteristics.

Later that day, law enforcement executed a search warrant on 639 Garland Street. Baez was the only person present (and the only person observed entering and exiting that day). Law

enforcement discovered a non-factory hidden compartment in the back of a leather couch which contained the sham parcel (the wooden box wrapped in yellow gift wrap) which had been removed from the Priority Mailing packaging, a second wooden box wrapped in yellow gift wrap containing two bricks of cocaine, two digital scales, plastic bags typically used in distributing narcotics and a shoe box containing approximately $99,800 in cash.  They also found in the basement a large cardboard box containing pieces of spray foam, carbon paper and wooden panels.

Around 10:00 p.m. Baez was read his Miranda rights in Spanish and agreed to answer questions.  He said he had spent most of the day sleeping and had only left the house twice, once at noon to pay a bill at Walmart and again at 3:00 p.m. to visit a relative at his mother's house. When investigators told him that he was seen on Frankford Avenue that day (receiving the sham parcel), Baez claimed to have no knowledge of that activity.  At approximately 10:15 p.m., he said he felt uncomfortable answering any more questions and requested assistance from an attorney.  Baez was indicted on all charges by a federal grand jury on December 21, 2016.

## II.

The Bail Reform Act, 18 U.S.C. § 3142, governs pretrial detention.  The Act provides that "[i]f, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  *Id.* § 3142(e).  There is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is

prescribed in the Controlled Substances Act." *Id.* Here, there is probable cause to believe that Baez violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, supported both by the grand jury's indictment and the facts proffered by the Government. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (holding that an indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption).

Section 3142(g) of the Bail Reform Act sets forth the factors the Court must review to determine if Baez has rebutted the presumption that there are no conditions which will assure his appearance at trial and protect the community. These factors are:

   (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

   (2) The weight of the evidence against the person;

   (3) The history and characteristics of the person, including-

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

   (4) The nature and seriousness of the danger to any person in the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). "The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forward with credible evidence conflicting with the presumption." *United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007); *see also United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). If the defendant is able to do so, the government

bears the ultimate burden of persuasion.  *See United States v. Perry*, 788 F.2d 100, 106 (3d Cir. 1986).  Even if a defendant rebuts the presumption of dangerousness or flight, however, the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the Court.  *See, e.g.*, *Carbone*, 793 F.2d at 560–61.  To order pretrial detention once the presumption has been rebutted, the Court must find by a preponderance of evidence that no conditions can reasonably assure the defendant's appearance at trial or by clear and convincing evidence that no combination of conditions will reasonably assure the safety of the community.  *See, e.g.*, *Perry*, 788 F.2d at 106; *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).  The Court reviews the factors and makes this determination *de novo*.  *See United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).

### III.

The offenses with which Baez is charged are undoubtedly serious, involving the trafficking of large quantities of cocaine (approximately 4 kilograms, which has a street value of about $400,000).  Moreover, Baez lives across the street from (and within 1,000 feet of) Tacony Creek Park Playground.  If convicted on all counts, the Government and Baez's counsel agree that he faces a mandatory five-year minimum and a sentencing guideline range of 121 to 151 months, exclusive of any possible adjustments for relevant conduct.  There were, however, no guns recovered in the investigation and there are no allegations that Baez has engaged in any violence.  (Tr. of Hr'g, at 7:11–16, ECF No. 22); *See United States v. Hernandez-Bourdier*, No. 16-222-2, 2017 WL 56033, at *8 (W.D. Pa. Jan. 5, 2017) (lack of evidence that defendant possessed firearm or engaged in violent acts in the past weighed in his favor); *Cf. United States v. Oliver*, No. 16-40, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) (defendant's possession and utilization of firearms weighed against him); *United States v. Jimenez*, No. 06-CR-00701-,

2007 WL 2028904, at *3 (E.D. Pa. July 12, 2007) (evidence that defendants had contemplated acts of violence involving firearms in the past weighed against them).  The case against Baez appears to be strong, supported by observations made pursuant to law enforcement surveillance and evidence obtained pursuant to the search of his residence.

With respect to Baez's personal history and characteristics, several considerations weigh in his favor.  First of all, he has no criminal record and no history of violent behavior.  (Pretrial Services Report, at 3.)  He has no history of mental health treatment or substance abuse.  (*Id.* at 2.)  Baez is a United States citizen with no passport and no history of foreign travel.  (*Id.* at 1.)  He has a wife and four children whom he represents he supports financially, though he does not live with them.  (*Id.*)  He has considerable ties to Philadelphia, where he has lived for seven years.  (*Id.*)  He was employed by Spirit Delivery & Distribution in Philadelphia from January 2015 to October 2016, and his employer has submitted to the Court a notarized letter praising Baez's hard work and dedication and stating that his position is available for his to return to employment.  *See* (Tr. of Hr'g, at 6:17–7:7); (Ex. D-1).  Baez's parents own a home and live together in Philadelphia.  *See* (Tr. of Hr'g, at 8:12–15, 10:10–15).  His parents, as well as his niece and a family friend, were present at the hearing.  *See* (*id.* at 7:21–8:6).

At the hearing, Baez proposed several conditions to assure his appearance as trial and the safety of the community.  He proposes living with his parents at their residence at 2907 North Waterloo Street in Philadelphia.  (*Id.* at 10:16–21.)  He is willing to submit to conditions of house arrest and electronic monitoring.  (Tr. of Hr'g, at 6:6–12.)  Additionally, Baez's father, Eddie Baez Rodriguez, testified that he is not currently employed and would be willing to serve as a full-time third-party custodian to his son.  (*Id.* at 8:6–10, 9:22–12:7.)  He stated that he understands the importance of this responsibility and promised to fulfill his obligations and to

6

contact the Court if his son attempted to flee.  (*Id.* at 10:22–11:11, 14:19–15:8.)   He also stated that he would not take any overnight trips while serving as custodian.  (*Id.* at 15:4–8.)  Finally, Baez's parents are willing to post a deed to their home, worth approximately $49,500 and unencumbered by any mortgages, as collateral for Baez's appearance at trial.[2]  (*Id.* at 8:10–16, 9:22–12:7.)

With respect to the final factor, "[d]rug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs like . . . cocaine."  *Oliver*, 2016 WL 1746853, at *8 (citing *Gibson*, 481 F. Supp. 2d at 423).  The Third Circuit has stated that this factor focuses on "danger to the community from the likelihood that defendant will, if released, commit one of the proscribed federal offenses [with which the defendant is charged]."  *Carbone*, 793 F.2d at 561–62 (quoting *Perry*, 788 F.2d at 111).  Thus, "safety" as contemplated by the Act "includes a reasonable assurance that drug dealing will not continue."  *Id.* (citing *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985)).

## IV.

As Baez has no prior criminal history, there are no indications that he poses a high risk of recidivism.  *Cf. Gibson*, 481 F. Supp. 2d at 423 (basing conclusion that defendant was likely to continue trafficking drugs on the fact that he had previously engaged in trafficking while under state court supervision for other crimes); *United States v. Amparo*, No. 05-939-M-2, 2005 WL 2877737, at *2 (E.D. Pa. Oct. 7, 2005) (finding that "the alleged sale of more than four pounds of powder cocaine while on probation suggests the defendant is disinclined to follow court-imposed conditions of release"); *United States v. Chagra*, 850 F. Supp. 354, 358 (W.D. Pa. 1994) (concluding that the defendant posed a high risk of recidivism based on his prior conviction for

---

[2] After the hearing, Baez's counsel submitted to the Court a notarized copy of the deed.

7

drug trafficking). Moreover, the Court finds it unlikely that Baez will continue trafficking drugs while living with his parents, subject to conditions of house arrest, electronic monitoring and the constant supervision of a third-party custodian.

Given his lack of criminal history and the availability of several conditions aimed at ensuring the safety of the community, Baez has rebutted the presumption that he poses a danger to the community through continued drug trafficking. Likewise, given his ties to the community, the imposition of the bail conditions and his parents' willingness to post their house for his bail, Baez has produced sufficient evidence to rebut the presumption that he poses a flight risk, notwithstanding the Government's assertion that he has contacts in Puerto Rico. *See Himler*, 797 F.2d at 162 (holding that mere opportunity for flight was not sufficient grounds for pretrial detention where there was no direct evidence that defendant would flee); *Hernandez-Bourdier*, 2017 WL 56033, at *9–10 (finding that defendant was not a flight risk despite the facts that he had significant familial connections in Dominican Republic and had lived there most of his life because he had no passport, no criminal history and no demonstrated plans to leave the country). In weighing the § 3142 factors, the Court also takes into account Pretrial Services' recommendation that Baez be released. *See United States v. Ocasio*, No. 15-83-05, 2016 WL 215230, at *3 (E.D. Pa. Jan. 19, 2016).

After considering the record as a whole, the Court does not find by a preponderance of the evidence that Baez is a flight risk or by clear and convincing evidence that he is likely to engage in violence or drug trafficking while awaiting trial. *See Hernandez-Bourdier*, 2017 WL 56033, at *11 (finding government has not carried its burden where defendant's employment history, lack of criminal history and familial ties weighed in favor of his release and the imposition of supervised electronic house arrest would provide sufficient assurance); *Ocasio*,

2016 WL 215230, at *3 (same); *United States v. Gonzalez*, No. 10-0693, 2010 WL 4861441, at *4 (E.D. Pa. Nov. 29, 2010) (same); *Cf. United States v. Traitz*, 807 F.2d 322, 325 (3d Cir. 1986) (holding that district court did not err in concluding that house arrest would provide sufficient assurance even where there was some of evidence that defendants had engaged in violence in the past). Under § 3142(c)(1)(B), release is warranted and the conditions of release specified in the attached order,[3] which are more stringent than those recommended by Pretrial Services, will assure Baez's appearance at trial as well as the safety of the community.

                                                              BY THE COURT:

                                                              */s/ Gerald J. Pappert*
                                                              GERALD J. PAPPERT, J.

---

[3] While the letter from Baez's former employer reflects positively on his reliability as an employee, Baez will not be allowed to return to his job at Spirit Delivery and Distribution. By its very nature, "delivery and distribution" work impedes constant monitoring and supervision.